**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BENJAMIN SLICER,**

        **Petitioner,**

**v.**                                     **Civil Action No. 1:10cv198**
                                         **(Judge Keeley)**

**TIMOTHY STEWART,**

        **Respondent.**

## REPORT AND RECOMMENDATION

This case is before the undersigned for a report and recommendation on the petitioner's

Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, the respondent's Motion to Dismiss

and the petitioner's responses, supplements and subsequent motions.

### I.   Factual and Procedural Background

The petitioner, a federal inmate incarcerated at the Federal Correctional Institution in

Morgantown, West Virginia ("FCI Morgantown"), is currently serving a 170-month sentence for

"Possession with Intent to Distribute Methamphetamine" in violation of 21 U.S.C. §§ 841(a)(1) and

841(B)(I)(a). (Doc. 10-2). His projected statutory release date is December 4, 2014, and his full-

term expiration date is September 30, 2016. (Id.) The petitioner was designated to FCI Morgantown

on March 16, 2010. (Doc. 10-3). On February 2, 2010, the petitioner was notified that he qualified

for the Residential Drug Abuse Program ("RDAP") based on cannabis dependence. (Doc. 10-4).

On that same date, the petitioner signed the written agreement to participate in the RDAP. (Doc. 10-

5) On February 25, 2010, the petitioner was determined to be ineligible for early release pursuant

to 18 U.S.C. § 3621(e) because his current offense involved the "carrying possession, or use of a firearm or other dangerous weapon or explosives." (Doc. 10-6). On June 29, 2010, the petitioner declined participation in the RDAP. (Doc. 10-7). As of January 3, 2011, he had not attempted to re-enroll or place himself on the wait list for the program. (Doc. 10-1, p. 3).

## II. Contentions of the Parties

### A. The Petition

In the petition, the petitioner simply alleges that he was deemed ineligible for the "time-off" for completion of the RDAP program under the BOP's policy for a two (2) point enhancement for a firearm at his sentencing. He asks the Court to grant him eligibility for successful completion of the RDAP program (Doc. 1, p. 7).

### B. The Respondent's Motion

In his motion to dismiss or for summary judgment, , the respondent asserts that the petition should be dismissed for the following reasons:

1. 18 U.S.C. § 3625 precludes judicial review of the BOP's substantive determination about the petitioner's eligibility for early release; and

2. The BOP properly utilized Program Statement 5162.05 in coming to the determination that the petitioner was not eligible for early release pursuant to 18 U.S.C. § 36621(E).

### C. The Petitioner's Responses

In his response, the petitioner notes that his is not challenging the BOP's authority to use its discretion in determining his eligibility for early release, nor his he alleging a violation of the A.P.A. Rather, he is challenging the selective implementation of its policy, whereby it grants a group of BOP inmates a benefit, yet denies it to another based solely on the physical locality of one group

versus the other. Accordingly, the petitioner maintains that the BOP is violating the Equal Protection Clause.

## III.  Standard of Review

### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

3

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to

state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v.

Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th

Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme

Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded

complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order

to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.** **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. In applying the standard for summary

judgment, the Court must review all the evidence "in the light most favorable to the nonmoving

party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing

the evidence or determining the truth and limit its inquiry solely to a determination of whether

genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of

informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the

opponent must do more than simply show that there is some metaphysical doubt as to material

facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The

nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id.

This means that the "party opposing a properly supported motion for summary judgment may not

rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of

evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at

248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

### A. Historical Background

Pursuant to the Crime Control Act of 1990, Congress required the BOP to "make available

appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable

condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In 1994, Congress authorized the

BOP to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who

successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B);[1] Pelissero v. Thompson,

170 F.3d 442, 443-444 (4th Cir. 1999).

Congress delegated to the BOP authority to administer its drug abuse programs, see 28

C.F.R. §550.56, and gave the BOP the discretion to determine which prisoners may participate in

---

[1] This section provides as follows:
The period a prisoner convicted of a nonviolent offense remains in custody after successfully
completing a treatment program may be reduced by the Bureau of Prisons, but such
reduction may not be more than one year from the term the prisoner must otherwise serve.

RDAP and which prisoners are eligible for sentence reductions.   Lopez v. Davis, 531 U.S. 230 (2001).

However, Congress did not define the term "nonviolent offense" used in §3621(e)(2)(B). Consequently, the BOP adopted a regulation in May 1995, which defined "'nonviolent offense' as a converse of 'a crime of violence,'" and "excluded from eligibility for early release under §3621(e)(2)(B) those inmates whose 'current offense is determined to be a crime of violence' as set forth in 18 U.S.C. §924(c)(3)." Pelissero, 170 F. 3d at 444; see also 28 C.F.R. §550.58. In addition to enacting the regulation, in May 1995, the BOP adopted Program Statement ("P.S.") § 5330.10 which reiterated Regulation 550.58. In July 1995, the BOP then adopted P.S. § 5162.02 "to further assist case management staff in deciding whether an inmate qualifies for early release under 18 U.S.C. §3621(e)(2)(B) and under implementing Regulation 550.58." P.S. § 5162.02 identified offenses that may be crimes of violence and specifically provided that an individual who is convicted of a drug offense under 21 U.S.C. §841 and received a two-level enhancement for possession of a gun has been convicted of a crime of violence. Id.

However, as noted by the Fourth Circuit in Pelissero, some federal courts held that possession of a firearm by a felon is not a crime of violence under 18 U.S.C. §924(c), so the BOP adopted a revised Regulation 550.58 in October 1997. In its revised regulation, the BOP deleted the crime of violence definition from 18 U.S.C. §924(c), but stated that at the director's discretion inmates whose current offense is a felony which involved the carrying, possession, or use of a firearm or other dangerous weapon were excluded from eligibility for early release. The BOP thereafter amended P.S. § 5330.10 to reflect this change and also adopted P.S. § 5162.04, effective October 9, 1997, which provided that "[a]n inmate will be denied the benefits of certain programs

6

if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons." The 1997 regulation was an interim regulation which was finalized on December 22, 2000. See 65 Fed. Reg. 80745.

## B. The Administrative Procedures Act

The APA requires administrative agencies, including the BOP, to provide notice of a proposed rule and a public comment period. See 5 U.S.C. §553; Chen Zhou Chai v. Carroll 48 F.3d 1331 (4th Cir. 1995). However, the notice and comment period of the APA does not apply to"to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. §553(b)(3).

Section 706(2)(A) of the APA states that a court will "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Furthermore, "[i]n making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. "Judicial review . . . is generally based on the administrative record that was before the agency at the time of its decision. . . ." Fort Sumter Tours v. Babbitt, 66 F.3d 1324, 1336 (4th Cir. 1995) (quoting Lewis v. Babbitt, 998 F.2d 880, 881 (10th Cir. 1993)). Under these provision of the APA, the scope of review is narrow and deferential. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). While the agency starts with the presumption that its action is valid, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977), if an agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision

7

that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed

to a difference in view or the product of agency expertise" then it is arbitrary and capricious.  Motor

Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

When reviewing the agency decision, the court must consider whether "the decision was

based on a consideration of the relevant factors and whether there has been a clear error of

judgment." Citizens to Preserve Overton Park, Inc., 401 U.S. at 416.  Under such deferential review,

we may not substitute our judgment for that of the agency.  Marsh v. Or. Natural Res. Council, 490

U.S. 360, 376, (1989).  Further, "*[p]ost hoc* explanations of agency action by appellate counsel

cannot substitute for the agency's own articulation of the basis for its decision." Arrington, 516 F.3d

at 1113 (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397 (1974)). A court can,

however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be

discerned." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974).

## C.  **Arrington v. Daniels**

The Ninth Circuit in Arrington held that 28 C.F.R. § 550.58 violates the APA because it is

arbitrary, capricious, an abuse of discretion, or is otherwise not in accordance with the law. The

Court stated:

> [the] district court had found two rational bases for the Bureau's decision to
> categorically exclude from eligibility for early release those prisoners
> convicted of offenses involving the possession, carrying, or use of firearms:
> (1) the increased risk that offenders with convictions involving firearms might
> pose to the public and (2) the need for uniformity in the application of the
> eligibility regulation.

Arrington, 516 F.3d at 1113.  The Ninth Circuit then examined the validity of each rationale.

1.   Threat to Public Safety

As to the first rationale, those convicted of firearm offenses pose a greater threat to public

safety, the Ninth Circuit found this rationale arbitrary and capricious. Specifically, the Court found

that this rationale was no where in the administrative record. "[The Court is] limited to the

explanations offered by the agency in the administrative record." Id. (citing State Farm Mut. Auto

Ins. Co., 463 U.S. at 50). It was irrelevant to the Court that this rationale was proffered by the

Bureau in its brief to the Supreme Court in Lopez. Id. The Court found this to be a type of "'*post*

*hoc* rationalization' of appellate counsel that it was forbidden to consider in conducting its review

under the APA." Id. (citing Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)).

Furthermore, the Court, in a footnote, discussed the argument that it is a common sense

decision to exclude those prisoners convicted of offenses involving firearms. Arrington, 516 F.3d

at 1113. The Bureau, using Bowen, 202 F.3d at 1219, made the argument that because it is common

sense that these types of prisoners pose a threat to public safety "[the Bureau] should . . . not be

required to further support its decision with detailed analysis or empirical support." Arrington, 516

F.3d at 1113. In response the Ninth Circuit stated:

> The Bureau's "common-sense" argument lacks legal significance in the APA
> review context where, as here, the agency failed to articulate the grounds for
> its purportedly common-sense decision anywhere in the administrative record.
> Although our review is deferential, the Bureau is not immune from its
> responsibility to "articulate [ ] a rational connection between the facts found
> and the choices made." [Ranchers Cattlemen Action Legal Fund v. U.S. Dep't
> of Agriculture, 415 F.3d 1078, 1094 (9th Cir. 2005).] Given the Bureau's
> failure to articulate any rationale, its argument that the agency should not be
> required to provide additional detailed analysis and empirical support for its
> purportedly "common-sense" decision is inapposite.

Id. Therefore, the Ninth Circuit found this reasoning could not be considered. The Ninth Circuit

then examined the second rationale.

2. Uniformity

"Uniformity in the application of the eligibility regulation," while in the administrative

record, was still found to be arbitrary and capricious by the Ninth Circuit. <u>Arrington</u>, 516 F.3d at

1113. 65 Fed. Reg. 80745 states that the third interim rule attempted to correct the varying

interpretations of the first interim rule so that "the Bureau could apply the regulation in a uniform

and consistent manner." However, uniformity, according to the Ninth Circuit, does not explain the

choice that was made between including or excluding those prisoners convicted of offenses

involving the possession, carrying, or use of firearms. <u>Arrington</u>, 516 F.3d at 1114.

> The agency's lack of explanation for its choice renders its decision arbitrary
> and capricious. <u>See</u>, <u>e.g.</u>, <u>Burlington Truck Lines, Inc.</u>, 371 U.S. at 167
> (striking down action for failure to explain why agency chose one of two
> available remedies where "[t]here are no findings and no analysis here to
> justify the choice made, no indication of the basis on which the [agency]
> exercised its expert discretion").

<u>Arrington</u>, 516 F.3d at 1114. Dismissing both rationales put forth by the BOP, the Ninth Circuit

then discussed the Supreme Court's decision in <u>Lopez v. Davis</u>, 531 U.S. 230 (2001), which, on its

face, seemingly justifies 28 C.F.R. § 550.58.

### 3. Lopez Decision

The Ninth Circuit, however, distinguished <u>Lopez</u> by narrowly construing its holding.

Specifically, the Ninth Circuit stated that <u>Lopez</u> "addressed a distinct question: whether the Bureau

had the authority to pass a rule categorically excluding otherwise eligible prisoners from a grant of

early release under § 3621(e)." <u>Arrington</u>, 516 F.3d at 1115. Moreover, the Ninth Circuit found that

the Supreme Court, in deciding this question, did not "consider an APA challenge to the validity of

the Bureau's 1997 interim rule." <u>Id</u>.

In <u>Lopez</u>, the Supreme Court agreed with the Bureau's rationale that "denial of early release

to all inmates who possessed a firearm in connection with their current offense rationally reflects

the view that such inmates displayed a readiness to endanger another's life." <u>Lopez</u>, 531 U.S. at

245. However, the Ninth Circuit contends that "this rationale . . . was supported by citation not to the administrative record but to the Bureau's brief." Arrington, 516 F.3d at 1115 (citing Lopez, 531 U.S. at 236). The Ninth Circuit further states that "[t]he Lopez Court's reliance on the arguments of appellate counsel, rather than on the administrative record, evidences the fact that the Lopez Court . . . was not engaged in § 706 review." Arrington, 516 F.3d at 1115-16. The Court in Arrington then noted that although the Lopez decision recognized "that there are rational explanations for the 1997 interim rule, which is identical to the Bureau's final rule in this case, they do not address whether the agency itself articulated those rationales in promulgating the final rule as required by § 706." Arrington, 516 F.3d at 1116. Finding no legitimate rationale for 28 C.F.R. § 550.58, the Ninth Circuit found that the Bureau's regulation failed to meet the arbitrary and capricious standard of § 706 and violated the APA. Id.

## D. Snipe v. Phillips

Of specific import to the Court's review of the instant petition is a decision issued in Snipe v. Phillips, 3:08cv22 (N.D.W.Va. Dec. 23, 2008), Chief Judge John Preston Bailey reviewed 28 C.F.R. § 550.58, 5 U.S.C. § 706, Lopez, Arrington and subsequent decisions of other Courts. After an extensive examination of the issue, Chief Judge Bailey determined that:

> The *Lopez* decision forecloses all issues presented in this case, except the issue left open by the Supreme Court in footnote 6 of the decision, which reads as follows:
>
> > *Amici* urge reversal on the ground that the Bureau violated the notice and comment requirements of the Administrative Procedure Act when it published the 1997 regulation. Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 18-24. We decline to address this matter, which was not raised or decided below, or presented in the petition for certiorari. *Blessing v. Freestone,* 520 U.S. 329, 340, n. 3 (1997).

See Snipe, Memorandum Opinion and Order Adopting in Part and Reversing in Part Opinion/Report and Recommendation (dckt. 37) at 4-5 (quoting Lopez, 531 U.S. at 244, n. 6.)

Moreover, Chief Judge Bailey determined that the issue left open by Lopez was not a genuine issue as the regulation is clearly interpretive. Id. at 5 (citing Minotti v. Whitehead, ___ F.Supp.2d ___, 2008 WL 4791462 (D. Md. Oct. 31, 2008); Pelissero v. Thompson, 170 F.3d 442 (4th Cir. 1999); Patterson v. DeWalt, 2006 WL 1520724 (D. Md. May 26, 2006); Keller v. Bureau of Prisons, 2006 WL 4808626 (D. Md. Nov. 15, 2006); Chevrier v. Marberry, 2006 WL 3759909 (E.D. Mich. Dec. 20, 2006)). Thus, "[t]he 'notice and comment' requirements of the Administrative Procedure Act ("APA") do not apply . . ." Id. Even if it did, Chief Judge Bailey found that "the final regulation, effective December 22, 2000, complied with the 'notice and comment' requirement of the APA." Id. (citing Chevrier, at *9; Baxter v. Quintana, 2008 WL 5115046 *6 (W.D.Pa. Dec. 4, 2008)).

Turning then to the Arrington decision, Chief Judge Bailey noted that "[m]ost of the courts outside of the Ninth Circuit which have considered the validity of the regulation in light of Arrington have found the decision not to be persuasive and have declined to follow it." Id. at 6. After examining those cases,[2] Chief Judge Bailey agreed that Arrington was unpersuasive, declined to follow its holding and upheld the challenged regulation. Id. at 6-12. Accordingly, it was not improper for the BOP to disqualify the petitioner from eligibility for early release,

**E.   Equal Protection Claim**

To be successful on an equal protection claim, the petitioner must demonstrate "that he has

---

[2] See Harrison v. Lamanna, 19 Fed.Appx. 342 (6th Cir. 2001) (unpublished); Sinclair v. Eichenlaub, 2008 WL 5235981 (E.D. Mich. Dec. 15, 2008); Baxter v. Quintana, supra; Minotti v. Whitehead, ___ F.Supp.2d ___, 2008 WL 4791462 (D.Md. Oct. 31, 2008); Neal v. Grondolsky, 2008 WL 4186901 (D.N.J. Sept. 9, 2008); Gatewood v. Outlaw, 2008 WL 2002650 (E.D.Ark. May 8, 2008).

been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the petitioner makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

In this case, the petitioner has failed to show that he is similarly situated with those inmates who have received the benefit of the Arrington decision. Quite simply, while Arrington may be persuasive authority in other jurisdictions, at this time, it is only applicable to inmates within the Ninth circuit. The plaintiff is not incarcerated within the Ninth Circuit. Thus, he is not situated the same as those inmates who have thus far received a benefit from that decision. For that same reason, the petitioner cannot show that his alleged unequal treatment is a result of intentional or purposeful discrimination. Instead, any "unequal treatment" is simply a matter of location.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Doc. 8) be **GRANTED** and the petition (Doc. 1) be **DISMISSED with prejudice** from the active docket of this Court.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. §

636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 17, 2011

  /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE